First National Bank of Clinton *v.* Cummins.

---

THE FIRST NATIONAL BANK OF CLINTON, NEW JERSEY, appellant,

*v.*

GEORGE O. CUMMINS et al., respondents.

When a debtor made a conveyance, fraudulent as to creditors, to his son, taking from him at the same time a mortgage to secure certain trust moneys in his hands, a court of equity, in setting aside such conveyance on a creditor's bill, will validate the mortgage in behalf of the *cestuis que trust.*

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Clinton Bank* v. *Cummins, 11 Stew. Eq. 191.*

*Mr. Martin Wyckoff* and *Mr. Wm. H. Morrow,* for appellant.

*Mr. Jos. Alward,* for respondents.

The opinion of the court was delivered by

BEASLEY, C. J.

This is a bill filed by a judgment creditor to set aside a conveyance made by the defendant in execution, on the ground that

37

such transfer of title was for the purpose of defrauding credit-ors. That such fraud existed, and was the motive actuating both the vendor and vendee in this case, was found as a fact by the vice-chancellor, before whom the case was tried, and such fact has not been put in question in this court, for it is not either of the persons engaged in this transaction, but it is the judgment creditor, and who was partially successful in his main pursuit in the court below, who has brought this appeal. The complaint of the appellant is, that although the conveyance made, as just men-tioned by the vendor, was declared to be in fraud of creditors, a mortgage for the sum of $2,047.46, which the vendee upon re-ceiving the title made to the vendor on the farm transferred, was allowed to stand, and was validated by the decree. Whether this mortgage is to be sustained or not is the only question to be decided in the present appeal.

The instrument thus challenged had this origin: Johnson J. Cummins was the executor of his father's will, and a certain share of the estate was left in trust in his hands for the benefit of his sister for her life, with remainder to her children. Cum-mins annually paid the interest on this share to his sister, but failed to secure, in any way, the principal sum, until he became insolvent, and then conceiving the design of covering up his property, made the conveyance already mentioned to his son, re-ceiving from him at the same time a mortgage to himself as trustee of this share of his sister and her children in her father's estate. The decree in chancery, under these circumstances, which are undisputed, validates this mortgage and puts the land con-veyed, subject to that encumbrance, under the lien of the appel-lant's judgment.

Such a decree is conspicuously equitable. If this vendor sought to cover his property from the pursuit of his creditors, he, on the other hand, entertained the purpose to secure a trust, which it was his duty to secure, and the consequence is, if this latter purpose is to be defeated, such result must be attained not by looking to the merits and justice of the affair, but at its mere form. For if this vendor had himself made, just before the conveyance to his son, this mortgage to any person to secure the

trust, no one would have pretended that such mortgage would have been invalidated by subsequent transfer of the title to the land to the son; and yet, the difference between the two transactions would have consisted, essentially, in the mode of doing the thing rather than in the thing itself. Nor did the argument contending for a reversal move on any higher plane than this, for the contention was, that as the statute avoided, in favor of creditors, the deed to the son, consequently, the latter, having no title, could not convey any interest in the property. But this reasoning turns aside from the fact that the giving of this mortgage was not an act done to defraud creditors; on the contrary, it was to secure the payment of an honest and highly conscionable claim, and therefore it is not readily perceived how, when the statute declares that fraudulent conveyances shall be void in favor of creditors, such a transaction is to be deemed within the provision. So far as concerns this mortgage, the design of the vendor and vendee was not fraudulent, and to that extent the transaction was not within the mischief the statute was intended to suppress. That part of the affair that comprises the making of this encumbrance had no tendency to cover the property to the injury of creditors; all that it did was to place a lien upon it in behalf of these *cestuis que trust*. In a court of equity, the matter can be dealt with partitively, the honest branch of it can be sustained, and the covinous portion can be abolished, and this has been effected by the decree in this case. And it is to be remembered that although the statutory expression is that the species of conveyance in question shall be "utterly void," inasmuch as such act is merely affirmative of the common law, such titles are but voidable, and are not only good between the immediate parties to them, but if the title be transferred *ante litem motam*, to a *bona fide* purchaser, the proprietary right of the latter becomes unimpeachable. In *Edwards* v. *Mitchell, 1 Gray 239, 242*, Chief-Justice Shaw, referring to conveyances of this sort, says they transfer a possession of the property, and a title, though a defeasible title, as against creditors.

In the argument addressed to this court in behalf of the appellant, it was a point much relied on that the *cestuis que trust*,

First National Bank of Clinton *v.* Cummins.

in whose favor that mortgage was given, do not, as it was in-
sisted, occupy the position of *bona fide* purchasers, on the ground
that such encumbrance rested exclusively on the consideration of
a past indebtedness.    In this respect the decision in the case of
*Mingus* v. *Condit, 8 C. E. Gr. 313,* was relied on, and in that
case the doctrine is maintained "that a deed or mortgage to a
*bona fide* purchaser or mortgagee, for which the only consideration
is the payment of a previous debt," is not within the sixth
section of the statute of frauds, which clause takes a certain class
of purchasers out of those provisions of the act that invalidate
conveyances intended to operate as a fraud upon creditors.    But
the doctrine of this case cannot be sustained.    The rule of law
by which the efficacy of the facts was gauged was wholly inap-
plicable.    The case was made up of the facts of a deed of con-
veyance fraudulent as to creditors, and a subsequent mortgage
to a *bona fide* creditor of such grantee at the instance of the
vendor.    It was not the case of a sale of the vendee in his own
interest, or with a view to carry the fraud into consummation
by turning the money so realized into the hands of the vendor
for his private use, and thus diverting it from his antecedent
creditors.    The chancellor failed to notice this discrimination,
and that the case before him presented the feature of an appro-
priation, as far as this operation of the mortgage reached, of the
funds of the fraudulent debtor in the same direction that he
himself would have judicially administered it if the mortgagee
had invoked, in a proper method, his assistance.    From this
view it appears the topic thus introduced in the argument has
no application to the present case.    These *cestuis que trust* do
not stand in the attitude of purchasers, but of creditors whose
claims have been, by way of preference, secured by their debtor.
No one can doubt that an embarrassed debtor may create such a
preference in favor of any chosen creditor.    Nor when such is
the case, would it seem to me to be a matter of any importance
that such creditor, thus taking a preference, was aware at the
time that the vendee giving him such a lien for a debt due from
his vendor, had taken his title in fraud of the creditors of such
vendor.    Such a transaction is not a participation in the fraud,

nor can it, in anywise, further it; nor has it any tendency to illegally prejudice the other creditors who are interested in the matter; so far as it extends, its effect is to undo the fraud, and to put, *pro tanto*, the property of the debtor to its legal uses. This is the view which was expressed by the court of appeals in New York, in the recent case of *Murphy* v. *Briggs, 89 N. Y. 446*. In all important particulars the facts in that instance were closely analogous to those constituting the present controversy. It was a case in which a debtor had conveyed his real estate in fraud of his creditors, and at his request his grantee had given a mortgage thereon to secure a debt which had existed at the time of the conveyance. The judgment set aside such conveyance at the suit of a creditor but protected and validated the mortgage. In the opinion it is stated that at the time the mortgage was delivered to the creditor, he was aware of the fraudulent title of the grantee who made the instrument to him. After deciding that the conveyance was fraudulent and voidable by creditors, the court said but " the mortgage was merely applying the property for the benefit of creditors, which was a rescinding of the fraudulent contract, and entering into a new contract for its sale or transfer, which, if made in good faith, will not be contaminated by the fraud of the first contract."

In the present case the claim of the appellants is most unconscionable. What they ask is to take that trust fund from these *cestuis que trust* and misapply it, in the guise of a breach of trust, to the personal debts of the trustee. Such a prayer could be granted by a court of equity only from the pressure of legal rules that was entirely irresistible, and such not being the present posture of affairs, the decree appealed from must be in all things affirmed.

*Decree unanimously affirmed.*